# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON ISRAEL FUERTE, | Case No. 1:18–cv–00135–SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

Plaintiff Brandon Israel Fuerte ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. BACKGROUND

On August 14, 2014, Plaintiff filed an application for SSI, alleging that he became disabled on August 3, 1996 due to autism, anxiety, and a "mental condition." (Administrative Record ("AR") 191–96, 216.) Plaintiff was born on August 3, 1996, and contends he was disabled since

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9.)

he was born.[2] (AR 191.) Plaintiff has a high school education, and his application states he has no relevant work history. (AR 217.)

**A.     Relevant Medical Evidence[3]**

    **1.     Central Valley Regional Center**

Between 1998 and 2009, medical professionals at the Central Valley Regional Center in Fresno, California, conducted an annual review of Plaintiff's Individual Program Plan. (AR 415–541.) An Individual Program Plan is a treatment plan for an individual with a mental illness that details the individual's progress toward short and long-term goals. Plaintiff's Individual Program Plan from 2008 and 2009 indicates he was doing well in school and generally able to take care of himself including eating a balanced diet and taking care of his hygiene. (AR 416–17, 427.) However, the Individual Program Plan also shows Plaintiff sometimes got frustrated when he did not get his way, was a picky eater when he was younger, and needed reminders sometimes to do his chores. (AR 416, 427, 436–37, 444, 451, 467, 508.)

    **2.     Matthew Dickson, Ph.D.**

On October 20, 2014, Dr. Dickson, a consultative examiner with the Disability Determination Service, performed a psychological evaluation of Plaintiff. (AR 369–72.) No medical records were provided for Dr. Dickson's review. (AR 369.) Plaintiff reported that he had difficulty understanding instructions, working under pressure, concentrating, remembering things, and completing tasks in a timely manner. (AR 369.) Plaintiff also reported that he "generally gets along OK with others" and described his history of interacting with people in school as "fine." (AR 370.) During the examination, Dr. Dickson observed Plaintiff's eye contact to be normal and his concentration to be fair. (AR 370–71.) Dr. Dickson noted Plaintiff was socially appropriate and cooperative during the examination, but his behavior was "mildly 'off' in a manner consistent with mild Autism." (AR 370.)

---

[2] SSI is first payable the month following the month in which Plaintiff filed his application. 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

[3] As Plaintiff's assertions of error are limited to the ALJ's consideration of limitations regarding Plaintiff's capacity to interact with supervisors, Plaintiff's testimony regarding his subjective complaints, and lay witness statements from Plaintiff's previous employer, only evidence relevant to those arguments is set forth in this Order.

Following his examination, Dr. Dickson diagnosed Plaintiff with "Autism Spectrum Disorder" and "Generalized Anxiety Disorder." (AR 372.) Dr. Dickson opined Plaintiff could understand, remember, and carry out "instructions related to unskilled work-related behaviors that are not given in a high-pressure situation." (AR 372.) Dr. Dickson further opined Plaintiff's abilities to respond appropriately to coworkers and supervision, and adapt to change and stress in the workplace, were moderately impaired. (AR 372.)

### 3. Gerard Williams, Ph.D.

On March 3, 2015, Dr. Williams performed a psychological evaluation of Plaintiff to identify any signs or symptoms consistent with any learning disabilities or affective disorders. (AR 384–89.) Plaintiff's mother accompanied him to the appointment and reported Plaintiff had "high functioning autism." (AR 384.) Dr. Williams noted Plaintiff did not demonstrate any confusion regarding the evaluation process, was friendly and cooperative during examination, and "seemed to put forth a maximal level of effort." (AR 385.)

Dr. Williams administered several psychological tests, which revealed a Full Scale I.Q. of 78, placing Plaintiff in the "borderline" category. (AR 385.) Dr. Williams noted Plaintiff was "clearly experiencing difficulties with his sustained attention and concentration" and diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder and Autistic Disorder. (AR 388.) Dr. Williams opined Plaintiff would benefit from high attention and concentration demand activities such as marksmanship, billiards, and chess, and recommended Plaintiff begin individual therapy to address mood management strategies, coping skills, and stressors specific to autism. (AR 388–89.) Dr. Williams also recommended a vocational consultation and further evaluation through an autism evaluation center. (AR 389.)

### 4. Kim Goldman, Psy.D.

On October 11, 2016, Dr. Goldman performed a psychological evaluation of Plaintiff. (AR 402–09.) Plaintiff reported he "can be socially awkward," and complained that he has a hard time understanding and following directions, remembering routines, functioning under pressure, and distinguishing people's emotions. (AR 402.) He also reported he graduated high school without special education classes and worked as a janitor for three months at

McDonald's, but quit the job when he moved to California. (AR 403.) Dr. Goldman noted Plaintiff was pleasant and cooperative throughout the examination, and followed instructions without the need for clarification or repetition. (AR 404.) When asked what would make it difficult for him to work in a competitive environment, Plaintiff responded that he has difficulty following specific instructions and sometimes needs someone to help him with particularly difficult tasks. (AR 405.)

Dr. Goldman diagnosed Plaintiff with Pervasive Developmental Disorder not otherwise specified, and Anxiety Disorder not otherwise specified, and assessed Plaintiff with a Full Scale I.Q. of 75, which placed him in the "borderline" category. (AR 405–06.) Dr. Goldman opined Plaintiff's ability to understand, remember, and carry out simple instructions, as well as his ability to make simple work-related decisions, were not impaired. (AR 406.) However, his ability to interact appropriately with the public, supervisors and coworkers, as well as his ability to respond appropriately to usual work situations and changes in a routine work setting, were moderately impaired due to the presence of a pervasive developmental disorder. (AR 406.) Dr. Goldman concluded Plaintiff "appear[ed] capable of performing at the very least simple and repetitive tasks in a competitive employment setting." (AR 406.)

### 5. State Agency Physician

On October 24, 2014, Paul Liu, D.O., a Disability Determination Services medical consultant, reviewed the medical evidence of record and assessed Plaintiff's level of functioning. (AR 69–71.) Dr. Liu found moderate impairments in Plaintiff's abilities to interact appropriately with the general public, maintain attention and concentration for extended periods of time, and understand and remember detailed instructions. (AR 69–70.) However, Dr. Liu also found Plaintiff's abilities to accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, were not significantly limited. (AR 70.) Dr. Liu noted Plaintiff had never been provided any "pysch treatment" and was not in special education classes, and concluded Plaintiff could do simple tasks in a work setting. (AR 71.)

**B.     Third-Party Lay Witness Statement from Plaintiff's Previous Employer**

On October 31, 2016, "Dr. Mittmann," the principal at the church school where Plaintiff worked for "just under two weeks," sent an "observation letter" to Plaintiff's grandmother. (AR 206.) The letter states that Dr. Mittmann noticed Plaintiff "had trouble following a maintenance routine even though a written schedule of daily duties was given to him" and he had "great difficulty remembering the needed routine" even after Dr. Mittmann walked Plaintiff through the process several times. (AR 206.) The letter also states that Plaintiff was "given an extra hour (4 hours) to do his duties each day, whereas the previous janitor could do it in three hours per day." (AR 206.) Ultimately, "due to the fact that there [were] so many classrooms, bathrooms, kitchen, cafeteria, and garage pick-ups throughout the campus that have lacked his full attention," the church school terminated Plaintiff's employment. (AR 206.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for SSI on December 5, 2014, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 75–78, 82–83.) Plaintiff appeared with counsel at the hearing on November 17, 2016, and testified before an ALJ as to his alleged disabling conditions. (AR 17; *see generally* AR 34–60.) A vocational expert also testified at the hearing. (AR 54–59.)

   **1.     Plaintiff's Testimony**

Plaintiff testified he lives in a house with his grandmother. (AR 38.) She does all the cooking, but he sometimes helps with the cleaning including vacuuming, sweeping, mopping, and mowing the lawn. (AR 38.) He has no physical limitations in doing any of these tasks, but he sometimes needs reminders to get them done. (AR 38, 47–48.) Plaintiff sometimes watches TV during the day, and when he watches a movie, he is able to pay attention through the entire movie. (AR 39–40.) He graduated from high school without taking any special education classes, but took special education classes when he was younger. (AR 42.)

Plaintiff testified he has previous work experience as a janitor at a church school and at McDonald's. (AR 42–44.) According to Plaintiff, he worked part-time at the church school for a week and a half, but the school principal fired him after complaints that the church was not

5

clean. (AR 42–43.) Plaintiff initially worked three hours a day, but increased to four hours a day after he had difficulty completing all his responsibilities in three hours. (AR 45–46.) He did not have difficulty concentrating on his responsibilities, but he "just felt overwhelmed with the amount of chores that needed to be done and the time that it had to be done." (AR 51–52.) At McDonald's, he cleaned the restrooms, lobby, and kitchen, but left the job when he moved to California. (AR 43–44.) At both the church school and McDonald's, he had to have instructions repeated to him, but he was never reprimanded with any suspensions or "write-ups." (AR 46–47.)

On a typical day, Plaintiff gets up, takes a shower, makes his bed, eats breakfast, exercises, and then he "usually like[s] to get out more and like go do things." (AR 40.) He goes to church, "hangs out" with friends at their houses or at the mall, and spends time with family at his uncle's house, where he watches TV or uses his phone. (AR 41.) He is not on any medications, but may have taken them a long time ago and does not remember what they were. (AR 41.)

### 2. **Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work experience as a kitchen helper, Dictionary of Operational Titles ("DOT") code 318.687-010, which was medium, unskilled work. (AR 54–55.)

The ALJ asked the VE three hypothetical questions during the hearing. First, the ALJ asked the VE to consider a person of Plaintiff's age and education, with no prior relevant work experience, who is limited to simple, routine tasks with only occasional, incidental contact with the public and coworkers. (AR 55.) The VE testified that such a person could perform the following unskilled work: (1) house cleaner, DOT code 323.687-018, which is heavy work, (2) hospital cleaner, DOT code 323.687-010, which is medium work, and (3) can-filling-and-closing machine tender, DOT code 529.685-282, which is light work. (AR 56–57.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who is limited to routine work-related decisions. (AR 57.) The VE testified that such a person could perform the same occupations outlined in response to the first hypothetical question. (AR 58.)

1    For the third hypothetical, the ALJ asked the VE to consider a person with the same capabilities as outlined in the second hypothetical, but who needed to be reminded to stay on task and given additional instructions at least once per hour. (AR 58.) The VE responded that there would be no occupations available in the national economy for such an individual. (AR 58.)

Plaintiff's counsel also asked the VE one hypothetical question. Plaintiff's counsel asked the VE to consider a person with the same capabilities as outlined in the first hypothetical, but with regard to work-like procedures, this person would be off-task ten percent of the time, and with regard to understanding and remembering short and simple instructions, this person would be off-task fifteen percent of the time. (AR 59.) The VE responded that there would be no work for such an individual. (AR 59.)

**D.    The ALJ's Decision**

In a decision dated December 27, 2016, the ALJ found that Plaintiff was not disabled. (AR 17–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 19–26.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 4, 2014.[4] (AR 19.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: (1) pervasive developmental disorder, not otherwise specified, and (2) anxiety disorder, not otherwise specified. (AR 19.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 19.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[5]

///

---

[4] The Court notes that while the ALJ found Plaintiff had not engaged in substantial gainful activity "since August 4, 2014, the application date" (AR 19), Plaintiff's SSI application is dated August 14, 2014 (*see* AR 191 ("On August 14, 2014, you applied for Supplemental Security Income . . .")).

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.*

> to perform a full range of work at all exertional levels. He is capable of performing simple routine tasks, and is able to make routine work-related decisions. The claimant is limited to occasional contact with the public and coworkers, in which such contact is incidental. He is unable to engage in teamwork.

(AR 21.) In formulating the RFC, the ALJ gave "some weight" to Dr. Dickson's opinion because it is "generally supported by the weight of the other evidence," but the ALJ gave "greater weight" to Dr. Williams' opinion because Dr. Williams performed extensive testing and is board-certified in clinical psychology. (AR 21–22.) However, the ALJ noted Dr. Williams did not provide any assessment of Plaintiff's functional limitations. (AR 22.) The ALJ gave "great weight" to Dr. Goldman's opinion because it is internally consistent and supported by other medical evidence in the record. (AR 22.) The ALJ found Plaintiff's testimony generally believable, and relied on Plaintiff's testimony in part, in formulating the RFC. (AR 24.)

The ALJ noted that the transferability of Plaintiff's job skills was not an issue because Plaintiff did not have any past relevant work (Step Four). (AR 24.) However, given his RFC, the ALJ concluded Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies including house cleaner, hospital cleaner, and can filling and closing machine tender (Step Five). (AR 24–25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 30, 2017. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff filed a complaint before this Court on January 24, 2018, seeking review of the ALJ's decision. (Doc. 1.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 416.920(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity,

which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. § 416.920(e). Next, at Step Four, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. § 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. § 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 416.920. allow

## V. DISCUSSION

In his Opening Brief, Plaintiff contends the ALJ erred in three respects: (1) failing to include any limitations in interacting with supervisors in Plaintiff's RFC; (2) failing to articulate clear and convincing reasons for discrediting Plaintiff's subjective complaints; and (3) failing to provide any reason for rejecting the third-party lay witness statement from Plaintiff's previous employer, Dr. Mittmann. (*See generally* Doc. 14 at 4–11.) Defendant responds that the ALJ properly formulated Plaintiff's RFC by accounting for impairments in Plaintiff's social functioning and incorporating Plaintiff's subjective complaints. (Doc. 15 at 7–12.) Defendant also responds that any error regarding the consideration of Dr. Mittmann's "observation letter" is harmless because the letter does not contradict any of the ALJ's findings regarding other work Plaintiff was capable of performing. (Doc. 15 at 12–14.)

**A.  Legal Standard**

An RFC assessment is an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The RFC assessment must be supported by substantial evidence, and "must consider

10

limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p).

**B.     The ALJ's RFC Assessment Properly Incorporates Plaintiff's Supervisory Limitations.**

Dr. Goldman opined Plaintiff's "ability to interact appropriately with the public, supervisors and coworkers," was moderately impaired (AR 406), and Dr. Dickson opined that Plaintiff was moderately impaired in his ability "to respond appropriately to co-workers and supervision" (AR 372). The ALJ gave "great weight" to Dr. Goldman's opinion and "some weight" to Dr. Dickson's opinion, and did not provide any reason for rejecting any portion of either opinion. (AR 21–22.) In his RFC assessment, the ALJ determined Plaintiff was capable of simple routine tasks, and making routine work-related decisions, but was unable to engage in teamwork. (AR 21.) The ALJ also limited Plaintiff to "occasional contact with the public and coworkers, in which such contact is incidental."  (AR 21.)  While Plaintiff contends the ALJ erred by failing to expressly include any supervisory limitations in the RFC assessment, the Court finds Plaintiff's RFC properly incorporates such limitations.

"[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, "[t]here is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, No. 16–cv–0963–JAH–BGS, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). In other words, the ALJ "may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician." *Ruiz v. Berryhill*, No. 1:17–CV–00180–BAM, 2018 WL 4204257, at *5 (E.D. Cal. Sept. 4, 2018) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

11

For example, in *Rounds*, a doctor opined that the claimant had "moderate limitations in her ability to accept instructions and respond appropriately to criticisms from supervisors." 807 F.3d at 1005. The ALJ did not expressly use the words "supervisor" or "respond to criticism" in the RFC, but limited the claimant to "one to two step tasks with no public contact, no teamwork and limited coworker contact." *Id.* at 1006. The Ninth Circuit held the ALJ's RFC determination "adequately incorporated" the supervisory limitation. *Id.*

Here, similar to *Rounds*, the ALJ's RFC is not defective because the ALJ translated the supervisory limitation into the RFC. Dr. Goldman and Dr. Dickson both opined Plaintiff had moderate limitations responding appropriately to supervisors. (AR 372, 406.) The ALJ was not required to restate Dr. Goldman and Dr. Dickson's limitations verbatim in the RFC. Rather, the ALJ properly translated these limitations into the RFC by finding Plaintiff was unable to engage in teamwork, but capable of simple routine tasks, making routine work-related decisions, and occasional, incidental contact with the public and coworkers. (AR 21.) In fact, after summarizing the opinions of Dr. Goldman and Dr. Dickson, including the supervisory limitations, and setting forth his RFC assessment, the ALJ specifically stated: "[T]he record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision." (AR 24.) Accordingly, the ALJ did not erroneously ignore any portion of Dr. Goldman or Dr. Dickson's opinions. *See, e.g.*, *Lori S. v. Berryhill*, No. 6:17–cv–1267–SI, 2018 WL 4742511, at *9 (D. Or. Oct. 2, 2018) ("Regarding Dr. Cole's assessment that Plaintiff would have difficulties interacting with the public, supervisors, and coworkers, as well as changes in a routine work setting, the ALJ accounted for those limitations in limiting Plaintiff to work that: (1) dealt primarily with objects rather than people; (2) did not require public contact; and (3) did not require teamwork assignments." (citing *Rounds*, 807 F.3d at 1006)).

Plaintiff only cites one case in support of his contention that the ALJ's "failure to include the limitation in interacting appropriately with supervisors is error," which is the U.S. District Court for the District of Oregon's decision in *Samples v. Colvin*, 103 F. Supp. 3d 1227 (D. Or. 2015). (Doc. 14 at 6.) However, the Court's decision in *Samples* is distinguishable from Plaintiff's case. In *Samples*, the plaintiff's treating physician opined that the plaintiff was

"moderately to markedly limited" in her "ability to accept instructions and respond appropriately to criticism from supervisors." *Samples*, 103 F. Supp. 3d at 1233. However, the ALJ's RFC assessment stated the plaintiff "can have occasional supervisor contact in a setting with predictable work assignments and few changes." *Id.* at 1231. The court in *Samples* held the ALJ erred because limiting the plaintiff to occasional supervisor contact did not properly incorporate the medical opinion that the plaintiff was "moderately to markedly limited" in her "ability to accept instructions and respond appropriately to criticism from supervisors." *Id.*

In contrast to the medical opinion in *Samples*, neither Dr. Goldman nor Dr. Dickson opined Plaintiff had any supervisory limitations in terms of accepting criticism. Instead, both doctors more generally opined that Plaintiff was limited in his ability to "respond" or "interact" "appropriately" with supervisors. As Plaintiff states in his reply brief, "limitations in interacting with supervisors does not only involve conflict" (Doc. 16 at 4); in the same vein, limitations interacting with supervisors does not only involve responding to criticism. Thus, unlike in *Samples*, the ALJ was not required to include an express limitation regarding Plaintiff's ability to respond to criticism, and instead, the ALJ's more general limitations regarding teamwork, coworkers, and simple tasks and decisions, are sufficient. Further, the Ninth Circuit's opinion in *Rounds*, which was published only months after the district court's opinion in *Samples*,[6] calls into question the court's holding in *Samples*, because the Ninth Circuit in *Rounds* expressly held that an RFC "limit[ing] [the plaintiff] to 'one to two step tasks with no public contact, no teamwork and limited coworker contact'—adequately incorporated" moderate limitations accepting instructions and responding appropriately to criticism from supervisors. 807 F.3d at 1006. Accordingly, the Court declines to find the ALJ erred based on Plaintiff's citation to *Samples*.

**C.     The ALJ's RFC Assessment Properly Incorporates Plaintiff's Subjective Testimony.**

Plaintiff testified that he graduated from high school without taking any special education classes, but took special education classes in elementary school. (AR 42.) He also testified he previously worked as a janitor at a church school and had to increase his daily hours from three to

---

[6] The U.S. District Court for the District of Oregon's order in *Samples* is dated April 10, 2015, and the Ninth Circuit's opinion in *Rounds* is dated December 7, 2015.

13

four hours a day because he had difficulty completing all his responsibilities in three hours. (AR 45–46.) He also worked as a janitor at McDonald's, but left the job when he moved to California. (AR 43–44.) At both the church school and McDonald's, Plaintiff had to have instructions repeated to him. (AR 46.) Plaintiff also submitted an "Adult Function Report" in which he stated he does not "clearly understand instructions . . ., work well under pressure or . . . accomplish tasks in a timely manner." (AR 232.) The ALJ "found the claimant generally believable, and relied, in part, on his testimony" in assessing Plaintiff's RFC. (AR 24.) While Plaintiff contends the ALJ failed to provide sufficient reasons for rejecting Plaintiff's testimony, the Court finds the ALJ was not required to reject Plaintiff's testimony because the ALJ accepted the testimony and incorporated it into his RFC assessment.

In assessing a claimant's RFC, the ALJ "must consider *all factors* that might have a significant impact on an individual's ability to work . . . includ[ing] . . . subjective evidence." *Erickson v. Shalala*, 9 F.3d 813, 817–18 (9th Cir. 1993) (emphasis in original) (internal quotations omitted); *Segura v. Berryhill*, No. CV 17-07303-RAO, 2018 WL 5255317, at *2 n.2 (C.D. Cal. Oct. 19, 2018) ("Subjective symptom testimony is also one factor that the ALJ must consider when assessing a claimant's RFC."); *see also* SSR 96-8p ("The adjudicator must consider all allegations of physical and mental limitations or restrictions . . . . Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."). If a claimant who alleges disability based on subjective symptoms produces objective medical evidence of underlying impairment which could reasonably be expected to produce pain or other symptoms alleged and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering clear and convincing reasons for doing so. *Smollen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996).

Plaintiff identifies three allegations that the ALJ purportedly failed to consider in assessing Plaintiff's RFC. According to Plaintiff, he testified that he cannot hold any job because 1) "he has trouble remembering even routine job instructions and . . . needs extra reminders for even simple work," 2) he cannot "perform tasks in a timely [sic] matter," and 3) he cannot "work under

14

pressure." (Doc. 14 at 8 (citing AR 46, 401,[7] 232).) However, Plaintiff mischaracterizes his testimony. Specifically, the portion of Plaintiff's testimony cited in his opening brief reveals that Plaintiff needed to have the instructions repeated at his job as a janitor at the church school, which involved cleaning classrooms and bathrooms as well as an entire church and cafeteria all by himself. (AR 42.) Plaintiff did not testify that he could not hold any job because he cannot remember any instructions. Similarly, Plaintiff's "Adult Function Report" only alleges that he does not "work well" under pressure or accomplish tasks in a timely manner. (AR 232.) It does not allege that he cannot hold any job because he cannot work at all under pressure or accomplish any tasks in a timely manner. Thus, in sum, Plaintiff testified that he needed to have the instructions repeated at a job involving a detailed routine cleaning multiple rooms used for different purposes, and his "Adult Function Report" indicates that he does not "work well" under pressure and generally takes longer than average to complete tasks.

The ALJ considered these limitations and incorporated them in his RFC assessment. Specifically, the ALJ limited Plaintiff to simple routine tasks and routine work-related decisions, and found Plaintiff was unable to engage in teamwork. (AR 21.) The Court finds these limitations adequately accommodate Plaintiff's difficulties working under pressure, completing tasks on time, and remembering a routine without having instructions repeated. Accordingly, the ALJ properly considered Plaintiff's testimony and was not required to provide any basis for rejecting Plaintiff's testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding the ALJ did not 'reject' subjective pain testimony where ALJ credited the existence of pain but rejected the claimant's conclusion that she could do no work of any kind); *see also, e.g.*, *Finch v. Apfel*, 246 F.3d 673 (9th Cir. 2000) (unpublished) ("The ALJ accepted Finch's testimony as to the breaks he required from sitting or standing in order to alleviate his pain, and for this reason held that Finch could not return to his prior employment.").

///

///

---

[7] Plaintiff appears to erroneously cite to page 401 of the Administrative Record, which is a cover page for ordering Plaintiff's medical records from the MDSI Physician Group in Utah, and does not include any of Plaintiff's subjective complaints. (Doc. 14 at 8 (citing AR 401).)

**D. Any Error Regarding the ALJ's Consideration of the "Observation Letter" from Plaintiff's Previous Employer was Harmless.**

Dr. Mittmann, who was the principal at the church school where Plaintiff previously worked as a janitor, provided an "observation letter" describing his experience working with Plaintiff at the church school. (AR 206.) In the letter, Dr. Mittmann states that he noticed Plaintiff had trouble following the maintenance routine even though Plaintiff was provided with a written schedule of daily duties. (AR 206.) Ultimately, Plaintiff was let go after less than two weeks "due to the fact that there are so many classrooms, bathrooms, kitchen, cafeteria, and garage pick-ups throughout the campus that have lacked [Plaintiff's] full attention." (AR 206.) The ALJ did not mention Dr. Mittmann's letter in his opinion. (*See* AR 17–26.) To the extent the ALJ erred by failing to discredit Dr. Mittmann's letter, the Court finds the error was harmless.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4). Such testimony may not be disregarded without comment, and if an ALJ would like to do so, "'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, to the extent the ALJ erred by not specifically addressing Dr. Mittmann's letter, the error is harmless because the error is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Dr. Mittmann's letter stated Plaintiff "had trouble following a maintenance routine" even though he was provided written instructions, and had "great difficulty" remembering the routine despite being walked through the process several times. (AR 206.) Dr. Mittmann did not state that Plaintiff "cannot perform the simple task of cleaning bathrooms," as Plaintiff contends. (Doc. 14 at 10.) Rather, the bathrooms were one of many rooms and areas in the church that Plaintiff was responsible for

16

1 cleaning independently, and Dr. Mittmann's lay opinion states that Plaintiff could not perform his
2 janitorial duties successfully because there were "so many" different types of rooms that needed
3 to be cleaned.

4     The ALJ's RFC assessment limited Plaintiff to simple routine tasks and routine work-
5 related decisions. Based on this RFC and the VE's testimony, the ALJ concluded Plaintiff was
6 not disabled because he could perform a significant number of jobs in the local and national
7 economies including house cleaner, hospital cleaner, and can filling and closing machine tender.
8 (AR 24–25.) The ALJ did not conclude Plaintiff could in fact perform his previous work as a
9 janitor at the church school or find that Plaintiff did not have trouble following a maintenance
10 routine. Thus, the ALJ's RFC assessment is consistent with Dr. Mittmann's lay opinion, and even
11 crediting Dr. Mittmann's observations as true, the ALJ's error is harmless because "no reasonable
12 ALJ . . . could have reached a different disability determination." *Stout*, 454 F.3d at 1056; *see*
13 *also, e.g.*, *Koenig v. Astrue*, No. CIV S-06-2033 KJM, 2008 WL 850032, at *5 (E.D. Cal. Mar.
14 28, 2008) (holding the ALJ's failure to consider a third party questionnaire was harmless because
15 the questionnaire was "consistent with the residual functional capacity . . . as determined by the
16 ALJ" and "[e]ven if [the questionnaire were] fully credited, no reasonable ALJ would have
17 reached a different disability determination"); *Pinegar v. Comm'r of the Soc. Sec. Admin.*, No.
18 2:09–cv–01767 KJN, 2011 WL 534139, at *6 (E.D. Cal. Feb. 14, 2011), *aff'd Pinegar v. Comm'r*
19 *of Soc. Sec. Admin.*, 499 Fed. Appx. 666 (9th Cir. 2012) (noting that the ALJ did not expressly
20 address a third-party report, but concluding "that such omission is harmless because even if the .
21 . . report is fully credited, no reasonable ALJ would have reached a different disability
22 determination").

### VI. CONCLUSION AND ORDER

24     After consideration of Plaintiff's and Defendant's briefs and a thorough review of the
25 record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore
26 AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant
27 Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.
28

IT IS SO ORDERED.

Dated: **February 20, 2019**　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE